# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Hannah Hekel,<br><br>       Plaintiff,<br><br>v.<br><br>Hunter Warfield, Inc.,<br><br>       Defendant. | Civil File No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION

1. This Court's jurisdiction arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2. This action arises out of Defendant's violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA").

3. Venue is proper in this District because the acts and transactions at issue occurred here, Plaintiff resides here, and Defendant transacts business here.

## PARTIES

4. Plaintiff Hannah Hekel is a natural person living in Olmsted County, Minnesota. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

1

5.      Defendant Hunter Warfield, Inc. ("Hunter Warfield") is a corporation organized under the laws of the state of Maryland, headquartered in Bethesda, Maryland.  Hunter Warfield primarily operates through its Florida offices which are located at 4620 Woodland Corporate Blvd, Tampa Florida, 33614.

6.      Hunter Warfield's business includes debt-collection activity against Minnesota consumers for alleged debts incurred in Minnesota.  Hunter Warfield is licensed with State of Minnesota (File No 1207213-2).  Corporation Service Company is the registered agent authorized to accept service on behalf of Hunter Warfield at 2345 Rice Street, Suite 230, Roseville, Minnesota, 55113.

7.      Hunter Warfield is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because Hunter Warfield uses instrumentalities of interstate commerce and/or the mails in a business the principal purpose of which is the collection of debts.  In addition, Hunter Warfield regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  The principal purpose of Hunter Warfield is the collection of debts; more than half of its revenues are derived from debt collection; and, in this case, Hunter Warfield engaged in debt-collection activity against Plaintiff.

8.      Hunter Warfield is licensed as a collection agency with the Minnesota Department of Commerce.

## FACTS

9. Beginning with the signing of a residential lease on or about April 30, 2019, Plaintiff was a tenant in Apartment C17 at the Gates of Rochester apartment complex in Rochester, Minnesota.

10. The Gates of Rochester is owned by MIMG CXXXVII Gates of Rochester, LLC, which is a Colorado limited liability company with its registered address located at 1010 Dale Street North, St. Paul, MN 55117, and its principal executive office at 2195 North Highway 83, Suite 14B, Franktown, CO 80116 (the "Landlord").

11. When she began her tenancy at the Gates of Rochester, the Landlord required tenants like Plaintiff to sign excessively long and confusing leases that contained provisions contradicting Minnesota statutes, misstating the rights of tenants under Minnesota law, and misleading tenants as to the true cost of tenancy under the lease agreements.

12. Specifically, the lease agreements, including Plaintiff's, caused confusion as to the tenants' responsibilities under the lease, including their responsibility to pay certain fees and charges that are in excess of the stated monthly rent.

13. Minnesota Statutes Section 540B.215 governs a landlord's responsibility to both prospective and current tenants in residential buildings

that utilize single-metered utilities. It requires, among other things, that landlords that bill tenants for utility charges separate from rent provide prospective tenants with notice of the total utility cost for the building for each month of the most recent calendar year at the time of entering the lease, put in writing an equitable method of apportionment and the frequency of billing, and, upon a tenant's request, provide a copy of the actual utility bill for the building along with each utility bill.

14. The Landlord failed to comply with these provisions, in violation of Plaintiff's rights under Minn. Stat. § 504B.215, subd. 2a(a). On information and belief, from approximately April to December 2019 the Landlord charged Plaintiff for water, trash, and sewer that were billed on a single-meter utility, as well as other hidden fees.

15. Because the Landlord failed to comply with Minn. Stat. § 504B.215, subd. 2a(a), the Landlord was not entitled to collect water, trash, and sewer charges from Plaintiff.

16. The Landlord evicted Plaintiff based in part for failing to fully pay for these unlawful charges.

17. The Landlord failed to return a security deposit to Plaintiff based in whole or in part on charges for utilities and other fees that are not authorized under Minnesota law.

18. In a letter dated January 11, 2022, Hunter Warfield sent an initial debt-collection letter to Plaintiff.

19. The January 11 letter lists the "Creditor Name" as "The Gates of Rochester."

20. The January 11 letter states that the "balance due" is $8,541.82.

21. The January 11 letter represents to Plaintiff that she owes a principal balance of $7,671.66, and interest in the amount of $870.16.

22. The January 11 letter states that "[b]ecause of interest at the rate of 6.00%, the amount due on the day you pay may be greater than the amount shown above. Hence, if you make payment more than 30 days after the date of this letter, an adjustment may be necessary after we receive your check, in which event we will inform you."

23. The January 11 letter provides a "resolution offer," but specifies that "**payment must be received within 30 days of the date of this letter**." (emphasis in original).

24. The alleged debt upon which Hunter Warfield sought to collect in its January 11 letter constituted an obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services were the subject of the transaction were primarily for personal, family,

5

or household purposes. As such, the alleged obligation is a "debt" as defined in 15 U.S.C. § 1692a(5).

25. The January 11 letter accurately states that "**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT.**"

26. On information and belief, the January 11 letter lacks the required statement contained in 15 U.S.C. § 1692(g)(a)(3) that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."

27. Hunter Warfield also failed to send this statement to the consumer within five (5) days of the initial communication.

28. On information and belief, the January 11 letter lacks the required statement contained in 15 U.S.C. § 1692(g)(a)(4) that "if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector."

29. Hunter Warfield also failed to send this statement to the consumer within five (5) days of the initial communication.

30. On information and belief, the January 11 letter lacks the required statement contained in 15 U.S.C. § 1692(g)(a)(5) that "upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

31. Hunter Warfield also failed to send this statement to the consumer within five (5) days of the initial communication.

32. Alternatively, to the extent ***the reverse side*** of the January 11 letter may contain the language referenced in 15 U.S.C. §§ 1692g(a)(3), g(a)(4), and g(a)(5), Hunter Warfield nevertheless failed to comply with those provisions. Mere inclusion of the validation notices is not sufficient. Rather, the FDCPA and the caselaw applying it require that validation notices be "conveyed effectively to the debtor." That is, the notice must be "placed in such a way to be easily readable, and must be prominent enough to be noticed by an unsophisticated consumer." *See Garcia Contreras v. Brock & Scott, PLLC*, 775 F.Supp.2d 808, 813 (M.D.N.C. 2011).

33. Specifically courts have held that a collection letter does not meet the requirements of the FDCPA where the validation notice is printed on the back of a collection letter, and the front of the letter does not does not contain any reference to the notice, or the validation notice is overshadowed or contradicted

by accompanying messages or notices from the debt collector. *See Wilson v. Quadramed Corp.*, 225 F.3d 350, 355 (3d Cir. 2000).

34.     The front of the January 11 letter contains no reference to Plaintiff's rights under 15 U.S.C. § 1692g.  The bottom of the front of the letter simply provides as follows:

**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY IFORMATION OBTAINED WILL BE USED FOR THAT PUPOSE.
SEE REVERSE SIDE FOR IMPORTANT INFORMATION**.

35.     The reference to "important information" on the reverse side, with no reference to Plaintiff's rights, particularly in light of the demand for payment within 30 days, is insufficient to comply with the FDCPA. *See, e.g., Savino v. Computer Credit, Inc.*, 164 F.3d 81, 86 (2nd Cir. 1998) (front of debt collection letter indicating "[p]lease see important notice on back" with validation notices on reverse side violates the FDCPA).

36.     If the required validation notices are contained on the reverse side of the January 11 letter, the least sophisticated consumer receiving the letter would not understand her rights under 15 U.S.C. § 1692g.  Indeed, Plaintiff herself did not understand her rights under 15 U.S.C. § 1692g after receiving the letter, and in making a copy of the letter for future reference, did not even copy the reverse side of the letter.

8

37. Hunter Warfield's January 11 collection letter contains false representations and attempts to collect amounts not permitted under the applicable agreement and/or Minnesota law.

38. Included in the balance attempted to be collected by Hunter Warfield are illegal utility fees not collectible under Minnesota law.

39. Hunter Warfield's conduct constitutes an attempt to collect amounts not authorized by contract or law, prohibited under 15 U.S.C. § 1692f(1).

40. Hunter Warfield falsely states that the interest rate is 6.00%. Nothing in Plaintiff's lease agreement with the Gates of Rochester provided for interest at a rate of 6.00%.

41. Hunter Warfield could not legally recover 6.00% interest from Plaintiff. The Minnesota Supreme Court in *Poehler v. Cincinnati Ins. Co.*, 899 N.W.2d 135, 141 (Minn. 2017) held that Minn. Stat. § 549.09 unambiguously applies to "all awards of pecuniary damages that are not specifically excluded by the statute, and does not restrict the recovery of preaward interest to cases or matters involving wrongdoing or a breach of contract." Accordingly, to the extent Hunter Warfield claims to be entitled to pre-award interest arising not under the lease but under state law, Minn. Stat. § 549.09 would govern any such claim.

42. Pursuant to Minn. Stat. § 549.09(c)(1)(i), "for a judgment or award of $50,000 or less or a judgment or award for or against the state or a political

subdivision of the state, regardless of the amount, or a judgment or award in a family court action, except for a child support judgment, regardless of the amount, the interest shall be computed as simple interest per annum. ***The rate of interest shall be based on the secondary market yield of one year United States Treasury bills, calculated on a bank discount basis as provided in this section***." (emphasis added).

43.     The applicable interest rate was 4%, not 6% as falsely stated by Hunter Warfield. *See* [https://www.revisor.mn.gov/court_rules/rule/msinte/](https://www.revisor.mn.gov/court_rules/rule/msinte/).

44.     Plaintiff was actually confused and misled by the false statements.

## FDCPA Violations

45.     Hunter Warfield's failure to provide required notices violated 15 U.S.C. § 1692g.

46.     Hunter Warfield's attempt to collect amounts unavailable under the contract or Minnesota law violated 15 U.S.C. § 1692f(1)

47.     In addition, Hunter Warfield's multiple false and misleading statements described herein violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(3), and 1692e(10).

48.     These false and misleading statements caused Plaintiff an informational injury as it misled her with regard to her legal and contractual rights.

49. Hunter Warfield's improper collection efforts also caused Plaintiff out-of-pocket costs, worry, and sleeplessness. Hunter Warfield's improper collection efforts cost Plaintiff time and money.

50. Hunter Warfield's conduct described herein caused particularized and concrete harm to Plaintiff. Plaintiff's statutory rights to truthful, non-misleading, non-oppressive, non-unconscionable communications and tactics in debt collection efforts were violated.

51. Hunter Warfield's violations of the FDCPA denied Plaintiff access to truthful information, which is a concrete form of informational injury under Article III, and the denial of that information on its own is sufficiently concrete. *See Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990 (11th Cir. 2016); *Demarais v. RAzOR Capital, LLC*, 869 F.3d 685 (8th Cir. 2017).

52. Hunter Warfield's violations of the FDCPA illustrate the risk of tangible harm from debt-collector misrepresentations and other misconduct, which is an increased risk of harm that itself supports standing here.

53. Hunter Warfield's actions caused an injury that is personal to Plaintiff, and Plaintiff's claim is not a nonjusticiable generalized grievance.

## **TRIAL BY JURY**

54. Plaintiff is entitled to and hereby respectfully demands a trial by jury. U.S. Const. amend. 7; Fed. R. Civ. P. 38.

## CAUSE OF ACTION

## (VIOLATION OF THE FDCPA)

55.   Plaintiff incorporates by reference all of the above paragraphs of the Complaint as though fully stated herein.

56.   The foregoing acts and omissions by Hunter Warfield constitute multiple violations of the FDCPA.

57.   Specifically, Hunter Warfield violated 15 U.S.C. §§ 1692g, 1692e, 1692e(2), 1692e(3), 1692e(10), and 1692f(1).

58.   As a result of these violations, Plaintiff has suffered concrete and particularized harm, including depriving her of her rights granted by Congress through the FDCPA (for example, the right to accurate representations in connection with debt collection activities).

59.   As a result of Hunter Warfield's violations of the FDCPA, Plaintiff is entitled to actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant as follows:

a. For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b. For an award of statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. For an award of costs of litigation including reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d. For such further and other relief as may be just and proper.

Dated: January 5, 2023

By:   /s Darren B. Schwiebert
Darren Brayer Schwiebert (#260642)
Debtlawsuitrelief@gmail.com
DEBT LAWSUIT RELIEF, INC.
301 Fourth Avenue South, Suite 280N
Minneapolis, MN 55415
Phone (612) 413-0577

John M. Buhta
Southern Minnesota Regional Legal Services, Inc.
903 West Center Street, Suite 230
Rochester, MN 55902
Phone: (507) 292-0080

Attorney for Hannah Hekel

Debt Lawsuit Relief, Inc. is a 501(c)(3) non-profit organization. The purpose of this corporation is providing relief to the poor and distressed by providing legal services to persons who were otherwise financially incapable of obtaining such services.

Southern Minnesota Regional Legal Services, Inc. (SMRLS) is a 501(c)(3) non-profit organization that provides legal help to low-income people in critical civil matters.